(77 App. Div. 49.)

SHERMAN v. ALLISON.

(Supreme Court, Appellate Division, Fourth Department.   November 25, 1902.)

1. LIFE INSURANCE — POLICY ON HUSBAND'S LIFE — ASSIGNMENT BY WIFE — WRITTEN CONSENT OF HUSBAND.

Laws 1879, c. 248, provides that any policy on the life of a husband for the benefit of his wife shall be assignable by the wife with the "written consent" of her husband. Such a policy was transferred by written assignments executed by the husband and wife separately, but to the same party, on the same date, and on the same paper. Above the assignments was a description of the policy and premiums paid, which was referred to in each assignment. The husband's assignment expressed as its consideration the substantial value of the policy. Held, that his assignment constituted a "written consent" sufficient to make her assignment good under the statute.

Appeal from special term, Onondaga county.

Action by Sarah A. Sherman against Caroline A. Allison. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The following is the opinion of the court below (MERWIN, J.):

On the 30th day of May, 1867, the Connecticut Mutual Life Insurance Company issued its policy of insurance upon the life of Jireh Sherman, in the sum of $5,000, for the sole use of the plaintiff, his wife, payable at his death to his wife if she survived him; if not, then to her children. The annual premium to be paid was $166. On the 26th day of May, 1899, Jireh Sherman died. In January, 1900, the plaintiff commenced an action against the insurance company for the recovery of the amount of the policy. Thereafter, upon the allegation that this defendant claimed to own the policy and the moneys payable thereon, such proceedings were had that the insurance company paid into court the proceeds of the policy, being the sum of $4,858.56, and Caroline A. Allison was substituted as defendant in place of the company. The claim of this defendant is that, by virtue of assignments made by the plaintiff and by Jireh Sherman on the 10th day of October, 1879, to George F. Comstock, and by him to this defendant in December, 1882, and on June 26, 1889, she is the owner of the policy and the moneys in controversy. It appears that on October 10, 1879, the plaintiff, by an instrument in writing, signed by her and dated, and duly acknowledged that day, for value received, transferred all her right, title, and interest in the policy to George F. Comstock. On the said day Jireh Sherman, by an instrument in writing, signed by him and bearing the same date, and duly acknowledged by him on that day, in consideration, as therein expressed, of $1,428.88 to him paid, transferred all his right, title, and interest in the policy to George F. Comstock. These instruments are on the same paper, are acknowledged before the same notary, and their execution and delivery must, I think, be assumed to have been part of one and the same transaction. The consideration, stated as $1,428.88, appears to be the amount of the cash premiums paid on the policy up to that date. The assignee, George F. Comstock, by verbal transfer in December, 1882, and by written transfer on June 26, 1889, transferred the policy to the defendant, and since the transfer from the plaintiff and her husband to the said George F. Comstock the latter or the defendant have paid or caused to be paid all the premiums upon the policy.

By chapter 248 of the Laws of 1879 it is provided as follows: "All policies of insurance heretofore or hereafter issued within the state of New York upon the lives of husbands for the benefit and use of their wives, in pursuance of the laws of the state, shall be, from and after the passage of this act, assignable by said wife with the written consent of her husband, or in case of her death by her legal representatives, with the written consent of her husband, to any person whomsoever, or be surrendered to the company issu-

¶ 1. See Insurance, vol. 28, Cent. Dig. § 474.

ing such policy, with the written consent of the husband." The main question in this case is whether the written transfer from the husband to Comstock was in effect a written consent to the transfer from the wife to Comstock, within the meaning of the statute? The statute does not state in what manner the consent shall be given. It does not require that the husband shall join in the transfer. If he in fact does join him with the wife in a written assignment, that is a sufficient consent to meet the requirements of the statute. Anderson v. Goldsmidt, 103 N. Y. 617, 9 N. E. 495. In the case cited the form of the assignment executed by the husband and wife was: "We, Barbara and Joseph Goldsmidt, * * .* hereby assign, sell, set over, and deliver to said John Anderson all our right, title, and interest in and to said policy." So that, if the husband and wife join in transferring all their right, title, and interest in the policy, that is enough. The husband, by a transfer of his interest, does not in terms consent that the wife may transfer her interest; but the act is such that, as said in the Anderson Case, the purpose of the statute is thereby fully answered.

In the present case, the assignment of the husband is separate from that of the wife. It is, however, part of the same transaction, and executed and delivered at the same time, as that of the wife. Upon the paper upon which both assignments are written there first appears a description of the policy and a statement of the premiums paid, and each assignment refers to this description,—the one by the expression "the above described policy," and the other by the expression "the foregoing policy." These assignments, being part of one and the same transaction, should be read together; and, if so, they are, together, just as forceful as the assignment in the Anderson Case, and answer just as fully the purpose of the statute. Upon the face of the papers the husband received from Comstock substantially the full value of the policy. He intended, if honest, that Comstock should have an operative transfer. So that, if the intent of the husband is the test, his transfer should be construed to be a written consent. The logic of the Anderson Case leads directly, I think, to the conclusion that there is here a sufficient written consent. The Anderson Case is not overruled or limited by the case of Dannhauser v. Wallenstein, 169 N. Y. 199, 62 N. E. 160. The cases of Slocomb v. Ray, 123 N. C. 571, 31 S. E. 829, 68 Am. St. Rep. 830, and Davidson v. Cox, 112 Ala. 510, 20 South. 500, cited by the counsel for plaintiff, involved the construction of statutes unlike the one applicable to this case.

It follows that the defendant is entitled to the fund. Findings or decision in short form may be submitted.

Argued before McLENNAN, SPRING, WILLIAMS, and DAVY, JJ.

McGowan & Stolz, for appellant.
Fowler & Crouch, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion of MERWIN, J., delivered at special term.

---

(?9 Misc. Rep. 443.)

### TALCOTT v. WABASH R. CO.

(Supreme Court, Trial Term, New York County. December, 1902.)

1. CARRIERS—EXCESS BAGGAGE—CONTRACT—COMMERCIAL TRAVELER.
     Where a commercial traveler pays the proper excess baggage rates on trunks containing, among other things, his employer's goods, and the agent checks the trunks to the traveler's destination, and gives him a voucher for the excess payment, the carrier is bound to his employer, as an undisclosed principal, for the transportation of the goods.

2. SAME—LOSS—ACTION FOR DAMAGES.
     Where a traveling man had four trunks, and in them was property belonging to various principals, and all the trunks were delivered to a